UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TERESA F.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-01967-JRS-MPB |
| | ) | |
| ANDREW M. SAUL, Commissioner of the Social | ) | |
| Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Teresa F. protectively filed for supplemental security income ("SSI")

from the Social Security Administration ("SSA") on December 15, 2014, alleging an

onset date of June 5, 2004.  [ECF No. 5-2 at 16.]  Her application was initially denied

on February 25, 2015, [ECF No. 5-8 at 2], and upon reconsideration on June 17, 2015,

[ECF No. 5-8 at 9].   Administrative Law Judge Belinda J. Brown (the "ALJ")

conducted a hearing on March 21, 2017.  [ECF No. 5-2 at 32-52.]  The ALJ issued a

decision on May 26, 2017, concluding that Teresa F. was not entitled to receive SSI.

[ECF No. 5-2 at 13.]  The Appeals Council denied review on May 1, 2018.  [ECF No.

5-2 at 2.]  On June 27, 2018, Teresa F. timely filed this civil action asking the Court

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

to review the denial of benefits according to 42 U.S.C. §§ 405(g) and 1383(c). [ECF No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 416.920(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater,* 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford,* 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett,* 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for

further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Teresa F. was 46 years of age at the time she applied for SSI.[2] [ECF No. 5-9 at 8.] She has completed the eleventh grade, with a history of special education classes, and previously worked in cleaning and merchandise corrections. [ECF No. 5-10 at 7.][3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.920(a)(4) and ultimately concluded that Teresa F. was not disabled. [ECF No. 5-2 at 25.] Specifically, the ALJ found as follows:

- At Step One, Teresa F. had not engaged in substantial gainful activity[4] since December 15, 2014, the application date. [ECF No. 5-2 at 18.]

- At Step Two, she had "the following severe impairments: COPD [chronic obstructive pulmonary disease], degenerative disc disease of the lumbar spine, morbid obesity, and depression." [ECF No. 5-2 at 18 (internal citation omitted).]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [ECF No. 5-2 at 18.]

---

[2] SSI is not compensable before the application date. 20 C.F.R. § 416.335.

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

- After Step Three but before Step Four, she had the RFC "to perform sedentary work as defined in 20 CFR 416.967(a) except she [can] stand and walk for four hours each, can climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds. She can occasionally stoop, but can never kneel, crouch or crawl. She can work in weather occasionally, in humidity and wetness occasionally, in dust, odors, fumes and pulmonary irritants occasionally, in extreme cold occasionally, in extreme heat occasionally, and in vibration occasionally. She is limited to simple, routine, repetitive tasks with simple work-related decisions, and requires demonstration for changes in procedures. She can have no production work. Lastly, she would be off task five percent of [the] time in an eight-hour workday, in addition to normal breaks, and limited to only occasional contact with co-workers and no contact with the public." [ECF No. 5-2 at 20.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Teresa F.'s RFC, she was incapable of performing her past relevant work as a merchandise marker. [ECF No. 5-2 at 24.]

- At Step Five, relying on VE testimony and considering Teresa F.'s age, education, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through the date of the decision, including representative occupations such as a document preparer, addressing clerk, and lens inserter. [ECF No. 5-2 at 24-25.]

### III.
#### DISCUSSION

Teresa F. raises three assignments of error, that (1) the ALJ did not properly weigh the opinion of Teresa's F.'s treating source, (2) the Appeals Council erred by failing to consider new and material evidence of Teresa F.'s mental functioning, and (3) the ALJ failed to address evidence of a disability decision by another governmental agency.

### A. Treating Opinion

Teresa F. contends that the ALJ did not properly consider several statements supportive of disability made by Teresa F.'s treating physician, Scott Marsteller, M.D. [ECF No. 7 at 16.] Specifically, Teresa F. asserts that the ALJ failed to provide support for her stated rationale for the weight that she gave the statements.[5] [ECF No. 7 at 16.] Teresa F. also asserts generally that the ALJ did not follow the SSA's guidance on weighing medical opinions, including by failing to utilize the prescribed factors and recognizing the deference given to treating opinions. [ECF No. 7 at 16-19.]

Based on the filing date of Teresa F.'s application, the treating physician rule applies. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (noting that the treating physician rule applies only to claims filed before March 27, 2017). In *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)[6]), the Seventh Circuit held that a "treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record." *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). "An ALJ must offer 'good reasons' for discounting

---

[5] The Commissioner contends that Teresa F. "does not challenge the ALJ's finding that Dr. Marsteller's opinion was unsupported by his own treatment notes . . . ." [ECF No. 14 at 7.] The Court agrees that Teresa F. has not provided any actual analysis of the record to assist the Court in consideration of the issue. However, the Court interprets Teresa F.'s assertion that the ALJ did not support her conclusion as raising the substantive issue as to whether Dr. Marsteller's opinion was consistent with his own treatment notes. While the ALJ's failure to cite record evidence in the portion of the decision devoted to addressing Dr. Marsteller's opinion does not doom the written decision as a matter of law (as will be addressed below), it does complicate Teresa F.'s ability to rebut the ALJ's relevant conclusion. Accordingly, the Court declines to avoid the issue based on waiver or forfeiture and will reach the merits.

[6] The cited regulation pertains to Title II disability insurance benefits. However, separate, parallel regulations exist for Title XVI SSI benefits. The parallel regulations are for the most part, including here, verbatim and provide the same legal guidance. *See, e.g.*, 20 C.F.R. § 416.927(c)(2). Decisional authority may refer to the parallel regulation.

the opinion of a treating physician." *Scott,* 647 F.3d at 739 (citing *Martinez v. Astrue,* 630 F.3d 693, 698 (7th Cir. 2011); *Campbell,* 627 F.3d at 306). "And even if there had been sound reasons for refusing to give [a treating physician's] assessment controlling weight, the ALJ still would have been required to determine what value the assessment did merit." *Scott,* 647 F.3d at 740 (citing *Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott,* 647 F.3d at 740 (citing *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009)); *see* 20 C.F.R. § 416.927(c). However, so long as the ALJ "minimally articulates" her reasoning for discounting a treating source opinion, the Court must uphold the determination. *See Elder v. Astrue,* 529 F.3d 408, 415-16 (7th Cir. 2008) (affirming denial of benefits where ALJ discussed only two of the relevant factors laid out in 20 C.F.R. § 404.1527).

The Court finds that the ALJ gave good reasons for not giving more weight to the rejected opinions of Dr. Marsteller. The regulations instruct the ALJ to consider "consistency" with "the record as whole" when determining the weight that should be given a medical opinion. 20 C.F.R § 416.927(c)(4). The regulations also instruct the ALJ to consider the "supportability" of a medical opinion, which refers to the relevant evidence presented by the source to support the opinion, including "particularly medical signs and laboratory findings." 20 C.F.R. § 416.927(c)(3). However, the

regulations specify that the supportability factor is more relevant to weighing opinions from "nonexamining sources." *Id.* Presumably, the relative distinction is appropriate because treating or examining opinions can be compared for consistency with their corresponding treating notes or examination findings. *See Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) (A treating source statement can be discounted if not properly explained and the treating notes do not provide any further clarification or support with objective signs). Here, the ALJ explained, "I give Dr. Marsteller'[s] opinion little weight, as his own examinations of the claimant do not support the physical limitations that he gives." [ECF No. 5-2 at 23.]

In the portion of the decision offering her conclusion, the ALJ did not provide citation to the record to demonstrate the lack of consistency between Dr. Marsteller's opined limitations and his own examination findings. [ECF No. 5-2 at 23.] However, the Court does not read the ALJ's rationale for the weight given the opinion evidence in a vacuum, but considers the analysis provided throughout the written decision. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and . . . it would be needless formality to have the ALJ repeat substantially similar factual analyses" throughout the decision). Dr. Marsteller provided several conclusory letters of support that asserted that Teresa F.'s asthmatic COPD precluded her from actively seeking employment until her breathing conditions could be reevaluated in the future. [ECF No. 5-14 at 67 (letter dated January 21, 2016); ECF No. 5-14 at 68 (letter dated July 18, 2016); ECF No. 5-14 at 71 (letter dated October 21, 2016).] The ultimate conclusion that a claimant is

disabled or unable to work is an issue reserved to the Commissioner based on the extensive body of law used to arrive at that determination. 20 C.F.R. § 416.927(d). When disability or unemployability is generally and conclusively asserted, as in the letters of support here, the SSA does "not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . ." 20 C.F.R. § 416.927(d)(3).

More important, the ALJ analyzed the evidence of record pertaining to Teresa's F.'s COPD and asthma. [ECF No. 5-2 at 21.] The ALJ confronted evidence showing hyperinflated lungs with radiological imaging and diminished breath sounds and wheezing heard during some examinations. [ECF No. 5-2 at 21.] However, the ALJ noted that Teresa F. was noncompliant with smoking cessation, diet, and exercise recommended to control her symptoms and that she continued "to smoke heavily." [ECF No. 5-2 at 21-22.] Dr. Marsteller's treatment notes indicated that Teresa F.'s COPD symptoms were chronic and "fairly controlled," and that she had "[m]oderate persistent asthma without complication." *See e.g.*, [ECF No. 5-15 at 32 (On October 21, 2016, Dr. Marsteller "discussed smoking cessation to try not to aggravate breathing problems.").] Dr. Marsteller's treating record assessments reasonably conflicted with his conclusive statements of disability based on Teresa's F.'s asthmatic COPD.

On February 14, 2017, Dr. Marsteller also completed a physical residual functional capacity questionnaire, [ECF No. 5-16 at 6-10], which the ALJ summarized, [ECF No. 5-2 at 23.] Dr. Marsteller assessed functional limitations, generally deserving of more thorough consideration, *see* 20 C.F.R. § 416.927, which

conflicted with the ALJ's RFC assessment, including that Teresa F. (1) would frequently have pain or other symptoms severe enough that they interfered with her attention and concentration needed to perform even simple work tasks, (2) could sit for one hour at a time and total of four hours in a workday, (3) could stand for fifteen minutes at a time and a total of less than two hours (between both walking and standing for the total time), (4) would need to be able to shift positions at will, and (5) would be absent from work an average of four days per month as a result of her impairments or treatment. [ECF No. 5-16 at 7-9.]

Dr. Marsteller did not provide reference to objective medical evidence to support the physical limitations he opined, and the Court does not find clarification in his treating records. For example, there is no persistent reference to acute physical symptoms that account for the need for such frequent absences from employment. On one occasion, Dr. Marsteller assessed an acute exacerbation of asthma and prescribed oral steroids to be taken over the next week. [ECF No. 5-15 at 51.] However, as noted above, Dr. Marsteller generally described Teresa F.'s asthma as moderate and without complication. *See* [ECF No. 5-16 at 6.]

Furthermore, there was little evidence to suggest that Teresa F. would have needed to change positions at will while performing sedentary work, could not have worked an eight-hour workday, or could not have stood or walked in combination for a total of two hours in a workday. The ALJ confronted one examination demonstrating a positive straight leg raise test and pain with motion, [ECF No. 5-15 at 64], but noted that the record otherwise demonstrated normal range of motion,

strength, and gait during examinations, [ECF No. 5-2 at 21.] Dr. Marsteller referred Teresa F. to an orthopedic specialist for her back problems. [ECF No. 5-15 at 51.] However, the specialist examination indicated that (1) she was comfortable and not in acute distress both sitting and standing, (2) her gait was non-antalgic with the ability to stand on her heels and toes with good strength and stability, (3) straight leg raising was negative on both the left and right, (4) she had a normal motor and sensory examination in both lower extremities, and (5) she had normal and pain-free range of motion in her hips and knees. [ECF No. 5-14 at 75.]

Considering the evidence of adequate control of Teresa F.'s breathing issues with treatment, as well as noncompliance with treatment recommendations, and the absence of objective examination findings related to her back that would substantiate an inability to perform even the modest demands of sedentary work, the Court does not find the ALJ's rationale unsupported by substantial evidence that Dr. Marsteller's assessments were inconsistent with his own treating notes. Dr. Marsteller's functional assessment was also based on severe depression and subjective symptoms, such as pain. *See* [ECF No. 5-16 at 6 (Dr. Marsteller noted that Teresa F.'s specialized treatment for mental health was managed by a psychiatrist and case worker).] However, the lack of objective support for the severely restricted physical limitations gave the ALJ ample reason to discount the veracity of Dr. Marsteller's assessment overall. The Seventh Circuit has held that "subjective complaints are the opposite of objective medical evidence and, while relevant, do not compel the ALJ to accept [a treating provider's] assessment." *Schaaf*, 602 F.3d at 875

11

(citing *Rice,* 384 F.3d at 370-71).  As it pertains to the effects of her back pain specifically, the orthopedic evaluation also showed her to have normal thought process, memory, attention span, and concentration.  [ECF No. 5-14 at 75.]

Furthermore, the ALJ's analysis of the evidence concerning Teresa F.'s depression provided ample clarification of the ALJ's logic in discounting the need for additional limitations in her RFC finding.[7]  In particular, Dr. Marsteller's assessment that her symptoms would frequently interfere with her attention and concentration for even simple tasks lacked record support.  The ALJ confronted evidence showing on occasion that Teresa F. presented with depressed mood, crying spells, and difficulty concentrating, "mainly due to intermittent flashback of abuse and family stressors.  Otherwise, exams showed she was alert, oriented, and cooperative with euthymic, appropriate mood, and logical thought processes."  [ECF No. 5-2 at 22 (internal citations omitted) (citing e.g., [ECF No. 5-14 at 11; ECF No. 5-14 at 21]).] There is a dearth of evidence demonstrating that Teresa F.'s persistence symptoms compromised her abilities that were tested with mental status examinations.  The ALJ confronted evidence from a consultative examination that Teresa F. "appeared

---

[7] Teresa F. asserts that the ALJ's limitation to simple, routine and repetitive tasks is insufficient to accommodate Teresa F.'s depressive symptoms.  [ECF No. 7 at 23.]  However, Teresa F. ignores that the ALJ's RFC assessment was considerably more restrictive, further including limitations to simple decisions, needing demonstration with changes, no production work, allowing her to be off-task five percent of the workday, occasional contact with coworkers, and no contact with the public.  [ECF No. 5-2 at 20.]  Teresa F. has not developed any basis in the record for additional functional limitations and a diagnosis alone is not enough to establish specific functional limitations as a matter of right. *See Jozefyk v. Berryhill,* 923 F.3d 492, 497-98 (7th Cir. 2019) (collecting cases); *Gentle v. Barnhart,* 430 F.3d 865, 868 (7th Cir. 2005) ("The social security disability benefits program is not concerned with health as such, but rather the ability to engage in full-time employment.  A person can be depressed, anxious, and obese yet still perform full-time work.")

depressed and anxious with mildly impaired attention and concentration, but she was fully oriented with relevant and coherent thoughts."[8]  [ECF No. 5-2 at 22 (internal citation omitted) (citing ECF No. 5-13 at 71 (Additionally, "[t]here was no evidence of racing thoughts, pressured speech, or tangential thinking.").] The ALJ also confronted the consultative examiner's corresponding assessment that Teresa F.'s ability to understand and remember simple instructions was mildly impaired.[9]  [ECF No. 5-2 at 23.]  The ALJ also noted that Teresa F. reported improvement with her symptoms with prescribed medication.  [ECF No. 5-2 at 22 (citing ECF No. 5-13 at 6; ECF No. 5-14 at 6).]  The ALJ's written decision—including the analysis provided throughout—demonstrates that the ALJ considered and applied the evidence relevant to an evaluation of Dr. Marsteller's assessments.

Moreover, as intimated above, the ALJ need not explicitly consider every factor in an evaluation of a medical opinion.  The Court does not agree with Teresa F. that the "ALJ's analysis wholly fails to recognize the special deference that must be attributed to the treating medical source opinions . . . ."  [ECF No. 7 at 18.]  The ALJ identified Dr. Martseller as a treating provider.  [ECF No. 5-2 at 23.]  The ALJ also

---

[8] As part of a later argument addressed below, Teresa F. contends that the ALJ cherry-picked the evidence of her mental functioning.  [ECF No. 7 at 22.]  However, Teresa F. only cites to evidence that was not before the ALJ, which was submitted rather to the Appeals Council after the ALJ issued her decision.  *See* [ECF No. 7 at 22.]  As the Seventh Circuit explained in *Rice*, "[b]ecause the Appeals Council eventually refused Rice's request to review the ALJ's unfavorable decision, we note that it is not appropriate for us to consider evidence which was not before the ALJ, but which Rice later submitted to the Appeals Council (or any argument based upon such evidence)."  384 F.3d at 366 n.2 (citing 42 U.S.C. § 405(g) (additional citations omitted)).

[9] Teresa F. does not present any argument that the ALJ erred in her evaluation of the consultative assessment, nor does she develop any argument that the numerous limitations relevant to Teresa F.'s mental functioning that were assessed by the ALJ were insufficient.  *See* supra note 8 (and accompanying explanation).  For example, the ALJ's assessed limitation that Teresa F. would need demonstration with changes appears consistent with mild impairment with instructions.

acknowledged the deference given to treating source opinions generally when she discussed the state agency opinions:

> Although those physicians were non-examining, and, therefore, their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist[s] a number of other reasons to reach similar conclusions (as explained throughout the decision).

[ECF No. 5-2 at 23.] The ALJ cited substantial evidence that conflicted with Dr. Marsteller's opinion, which supported her decision to not give controlling or greater weight to the assessment. "Not even the claimant's treating physician, who presumably is the expert most familiar with the claimant's condition, is given such complete deference." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (citing *Hofslien v. Barnhart*, 439 F.3d 375, 376-77 (7th Cir. 2006) (additional citations omitted)). Accordingly, the Court does not find any basis to remand for further consideration of Dr. Marsteller's medical source statements.

### B. Evidence Submitted to the Appeals Council

Along with her appeal to the Appeals Council, Teresa F. submitted two hundred and sixty-two pages of additional medical records pertaining to her mental health treatment during the relevant period covered by the ALJ's decision. *See* [ECF No. 5-3; ECF No. 5-4; ECF No. 5-5; ECF No. 5-6.] Teresa F. contends that the Appeals Council erred as a matter of law by not finding the evidence new and material and "improperly assessed [her] mental health impairments." [ECF No. 7 at 20.]

As noted above, the Appeals Council denied Teresa F. request for review. The notice of action from the Appeal Council addressed the additional evidence, "You

submitted Treatment Notes from Meridian Health dated from January 22, 2016 through May 16, 2017 (262 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence." [ECF No. 5-2 at 3.]

In *Stepp v. Colvin,* 795 F.3d 711, 722 (7th Cir. 2015), the Seventh Circuit explained that a reviewing court's "ability to review the Appeals Council's decision . . . is dependent on the grounds on which the Council declined to grant plenary review." "If the Council determined Stepp's newly submitted evidence was, for whatever reason, not new and material, and therefore deemed the evidence 'non-qualifying under the regulation,' we retain jurisdiction to review that conclusion for legal error." *Id.* (quoting *Farrell v. Astrue,* 692 F.3d 767, 771 (7th Cir. 2012); *see Eads v. Sec'y of the Dep't of Health & Human Servs.,* 983 F.2d 815, 817 (7th Cir. 1993) (explaining that if the Council's decision not to review a case "rests on a mistake of law, such as the determination . . . that the evidence newly submitted to the Appeals Council was not material to the disability determination, the court can reverse")). The Seventh Circuit further explained:

> However, if the Appeals Council deemed the evidence new, material, and time-relevant but denied plenary review of the ALJ's decision based on its conclusion that the record—as supplemented—does not demonstrate that the ALJ's decision was "contrary to the weight of the evidence"— the Council's decision not to engage in plenary review is "discretionary and unreviewable."

*Stepp,* 795 F.3d at 722 (7th Cir. 2015) (quoting *Perkins v. Chater,* 107 F.3d 1290, 1294 (7th Cir. 1997)). Since *Stepp,* the SSA has revised the relevant regulation concerning consideration of additional evidence submitted to the Appeals Council. *See* 81 FR

90987 (Dec. 16, 2016) (Effective January 17, 2017—with claimant compliance not required until May 1, 2017—20 C.F.R. § 416.1470 was revised.)

Because the Seventh Circuit has not yet had an opportunity to (1) provide precedential guidance concerning application of the new regulation or (2) analyze the specific language provided in the notice from the Appeals Council, the Court finds it necessary to review the relevant regulatory and decisional history.  When *Stepp* was decided, the relevant regulation stated:

> In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.  In reviewing decisions other than those based on an application for benefits, the Appeals Council shall evaluate the entire record including any new and material evidence submitted.  It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 416.1470(b).  As stated above, the Seventh Circuit observed a distinction, if the evidence submitted to the Appeals Council was deemed by the Appeals Council to not qualify for consideration because it was not new, material, or related to the period on or before the ALJ's decision, the reviewing court retained jurisdiction to evaluate the Appeals Council's conclusion for an error of law in applying the regulation.  However, if the evidence was considered by the Appeals Council, but the Appeals Council declined to undertake a discretionary review of the ALJ's decision because the Appeals Council did not consider the ALJ's action, findings, or conclusions contrary to the weight of all the evidence of record—including the newly submitted evidence—then the reviewing court does not retain jurisdiction to review

the Appeals Council's action.  *See Eads,* 983 F.2d at 816-18.  When the Appeal Council declines discretionary review after considering the new evidence against the weight of the evidence, the reviewing court only retains jurisdiction to review the final decision of the Commissioner—the ALJ's decision—under 42 U.S.C. § 405(g).  *Id.*  "It would change our role from that of a reviewing court to that of an administrative law judge, required to sift and weigh evidence in the first instance, rather than limited as we are to reviewing evidentiary determinations made by the front-line factfinder."  *Id.* at 817-18.

However, the distinction drawn by the Seventh Circuit is an imperfect one. When reviewing an Appeals Council's denial of review for an error of law, specifically determining whether the newly submitted evidence met the regulation's requirements, the Seventh Circuit explained that "[n]ew evidence is material for purposes of § 405(g) if there is a 'reasonable possibility' that it would change the outcome."  *Nelson v. Bowen,* 855 F.2d 503, 506 (7th Cir. 1988) (quoting *Godsey v. Bowen,* 832 F.2d 443, 444 (7th Cir. 1987)).  To evaluate that standard of materiality, the reviewing court must examine the newly submitted evidence and compare it with the ALJ's rationale for denying benefits.  For example, in *Farrell*, the Seventh Circuit determined that the newly submitted evidence included a fibromyalgia diagnosis, which filled the "evidentiary gap" in direct contrast to the ALJ's rationale that a valid diagnosis had not been confirmed.  692 F.3d at 771.  The conclusion reached in *Farrell* involved a rather straight-forward application of the reasonable probability standard that did not necessitate any extensive review of the evidence or require the reviewing

court to weigh conflicting evidence like a front-line factfinder. Because the ALJ obviously depended on the absence of a diagnosis and the newly submitted evidence obliterated that rationale, the evidence was material.

In contrast, an evaluation of materiality can involve a rather extensive review of the evidence that includes a rigorous comparison of the newly submitted evidence and the existing evidence, which only falls short of weighing the evidence by not reaching any specific conclusion about the weight that should be given conflicting evidence. For example, in *Nelson*, the newly submitted evidence included a medical opinion from Dr. Johns and hospital records, which the Seventh Circuit analyzed:

> As stated above, Dr. Johns' report, in relevant part, consists of an opinion that Nelson can stand only ¾ of an hour and walk only ½ hour during a workday. Moreover, the July 23, 1986 correction notes that Nelson suffe[r]s from "chronic edema" of both legs. In denying Nelson's petition for review, the Appeals Council failed to even consider these portions of Dr. Johns' report, instead mentioning only those portions which stated that Nelson had no restrictions on sitting and could lift 15 pounds. The [Commissioner] now contends that Dr. Johns' report is contradicted by the report of Dr. Farenbach, who also examined Nelson. However, after reviewing Dr. Farenbach's report, we find that it is not clear that he focused to any great extent in his examination on possible problems with Nelson's legs. Moreover, the ALJ did not discuss Dr. Farenbach's opinion in relation to Nelson's reported leg problems.

> In addition, the Henrotin Hospital records indicate that Nelson was admitted on two occasions in 1981 for treatment of abscesses of his legs. The Appeals Council found those records immaterial to Nelson's disability at the time of his application for benefits in April of 1985. However, phlebitis and edema, which were also reported by Drs. Sevandal and Johns, are apparently conditions which come and go and may have been a problem in 1985 though they may not have been apparent when Dr. Farenbach examined Nelson. Though we express no opinion as to the weight to be given the Henrotin Hospital records, they are at least relevant to the condition of Nelson's legs at the time of his application and lend support to Nelson's and Dr. Johns' more recent reports of Nelson's inability to walk or stand for long periods.

Thus, contrary to the opinion of the Appeals Council, we conclude that the Henrotin Hospital records and Dr. Johns' report are material to the issue of Nelson's ability to walk or stand. Given the paucity of the evidence before the ALJ relevant to this issue and the lack of evidence clearly contradicting the additional evidence offered by Nelson before the Appeals Council, that evidence, if considered by the ALJ, might reasonably have affected his determination that Nelson could stand and walk for the periods required for a finding he was capable of light work.

855 F.2d at 507-08 (footnote omitted).

To complicate matters, since *Stepp*, the SSA has revised the relevant regulation concerning the submission of additional evidence to the Appeals Council. The regulation now provides that:

The Appeals Council will review a case if—

. . . .

5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

20 C.F.R. § 416.1470(a). Paragraph (b) provides that the claimant must also establish "good cause" for not having submitted the evidence for the ALJ's consideration. 20 C.F.R. § 416.1470(b). The revised regulation jettisons any explicit reference to the Appeals Council comparing the ALJ's decision against the weight of the evidence as part of its determination to grant review. Instead, the regulation explicitly incorporates the language used by the Seventh Circuit to evaluate materiality as part of the required determination. The regulation continues to require that the evidence

is also material, which renders the requirements duplicative when applying the existing Seventh Circuit precedent.

As noted above, the Appeals Council explained that the newly submitted evidence did not show a reasonably probability of changing the outcome of the case. Though, the very next sentence explained that the Appeals Council did not consider or exhibit the evidence. Taking these two sentences together, it is unclear whether the Appeals Council did not consider the evidence at all, or whether it in fact evaluated the evidence to find it would not "change the outcome," leading to its decision to deny review. The Commissioner argues because the Appeal Council properly evaluated the evidence in accordance with the revised regulation and declined discretionary review that the Appeals Council's finding "is not reviewable." [ECF No. 14 at 14.] The Commissioner relies, in part, on *Steven D. A. v. Comm'r of Soc. Sec.*, 2018 WL 3438856, at *7 (S.D. Ill. July 17, 2018), which stated that the "second sentence is admittedly not as clear as it could be. However, read in context, the second sentence most plausibly means that the Appeals Council did not consider the additional evidence as part of a plenary review because it denied review." The Court is not persuaded by the Commissioner's argument. In *Steven D. A.*, the reviewing court continued to evaluate the evidence, reasoning that the plaintiff did not "make any attempt to demonstrate that the records that post-date the ALJ's decision would be likely to change the outcome of the decision. In fact, those records document findings that are largely duplicative of entries contained in the records that

were before the ALJ."[10] *Id*. More important, the Court finds the Seventh Circuit's past distinction unworkable as applied to the revised regulation. The Court would have jurisdiction to review the Appeals Council's determination that evidence was not material but would lack jurisdiction to review an Appeals Council's finding that the evidence did not show a reasonable probability of changing the outcome of the decision. As applied, there is no substantive difference between those separate requirements. Accordingly, the Court declines to avoid—based on a lack of jurisdiction—an evaluation of whether the newly submitted evidence would have had a reasonable probability of changing the outcome of the decision. Consistent with the Seventh Circuit's precedents above, including *Nelson*, the Court will reach the merits as to whether the evidence was material.

The Court finds that the Appeals Council did not err in finding that newly submitted evidence did not show a reasonable probability of changing the ALJ's decision. The newly submitted evidence—though more voluminous than the existing evidence of record relevant to Teresa F.'s mental health functioning—is not substantially different than the evidence that was analyzed by the ALJ. Mental status examinations consistently showed that Teresa F. had good hygiene and a clean appearance, was dressed appropriately, had normal speech, logical, organized, and

---

[10] The reviewing court in *Steven D. A.* also evaluated whether the evidence that predated the ALJ's decision had been available to the plaintiff prior to the ALJ's decision. *Id*. Whether this analysis was intended to be relevant to an evaluation of the requirements that the submitted evidence was new or that the plaintiff had good cause for not producing the evidence earlier, the Court declines to analyze the Appeals Council's decision to deny review based on any other reason than the one supplied by the Appeals Council here. "The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943).

sequential thought processes, was oriented times three, had intact associations, no abnormal thought content, good attention and concentration, euthymic and appropriate mood and affect, and fair insight and judgment. *See, e.g.*, [ECF No. 5-3 at 5-6; ECF No. 5-3 at 17.] At one point, she did express that she was unhappy with her medications because of side effects and ineffectiveness, which prompted an adjustment by her provider. [ECF No. 5-3 at 7-8.] Teresa F. also reported some symptoms including flashbacks and recurrent thoughts along with situational family stressors. *See, e.g.*, [ECF No. 5-3 at 13-14 (However, she also contemporaneously reported her medications had "been helpful regarding depression and anxiety."); ECF No. 5-3 at 29-30 (documenting significant family stress).] At other times, she reported her antidepressant was effective. *See, e.g.*, [ECF No. 5-3 at 15; ECF No. 5-3 at 17; ECF No. 5-3 at 19.] The evidence also indicates "minimal progress in treatment," with "continued symptoms of depression including crying spells and lack of motivation," but she denied "suicidal and homicidal ideation" and many of her "symptoms were exacerbated by her relationship with her daughters." *See, e.g.*, [ECF no. 5-3 at 39; ECF No. 5-3 at 54.] The ongoing symptoms—as well as their correspondence with familial stressors—are consistent with the ALJ's summary and analysis of the previous evidence of record.

The evidence also consistently notes noncompliance with treatment recommendations. *See, e.g.*, [ECF No. 5-4 at 43-44 (Client "has in the past shown to not follow through on plans or suggestions from [provider] to assist with her symptoms."); ECF No. 5-4 at 75 (The provider explained the importance of not

smoking and Teresa F. "showed understanding but reports she is not ready to quit.");

[ECF No. 5-5 at 11](ECF No. 5-5 at 11) (further issues with not following therapist recommendations for coping).]

Moreover, the evidence described activities that showed Teresa F. to be more functional, both mentally and physically, than she had alleged during the hearing. For example, during one visit, she reported "not crafting as much due to she [sic] and her roommate [spending] a lot of time outside over the weekend." [ECF No. 5-4 at 67 (Teresa F. "and her roommate planted more flowers over the weekend.").] She reported "no crying spells in about a week." [ECF No. 5-4 at 67.] She reported "trying to keep herself busy as well as keeping her mind busy and focusing on other things to do." [ECF No. 5-4 at 67.] Teresa F. planned "on crafting some this afternoon and getting her bird feeders she has made finished so she can hang them up outside." [ECF No. 5-4 at 68.] Teresa F. reported "walking up and down her stairs in her home but needing to hold on to the railing" for exercise and "crafting over the weekend." [ECF No. 5-5 at 18.] She reported "feeling somewhat motivated today as [client] stated she has her roommate[']s car and is able to run errands today." [ECF No. 5-6 at 5.]

The newly submitted evidence does not include any new diagnosis or assessment. Rather, the evidence largely corroborates the ALJ's findings and merely expands on the same issues that the ALJ already addressed. Thus, the Court agrees with the Appeals Council that the newly submitted evidence did not provide a

reasonable basis to change the ALJ's decision. The Appeals Council's determination is affirmed.

### C. Evidence of a Disability Decision by Another Governmental Agency

Teresa F. contends that the ALJ completely ignored evidence that Teresa F. had been found to be "medically frail" by the Indiana Family and Social Services Administration ("Indiana FSSA"). [ECF No. 7 at 25.] Teresa F. asserts that she has been "declared disabled by the medical review panel of the State of Indiana." [ECF No. 7 at 25.]

Social Security Ruling ("SSR") 06-03p (S.S.A. Aug. 9, 2006), 2006 WL 2329939, at *6, makes clear that the SSA is not bound by disability determinations made by other governmental agencies, but rather makes the determination based on its own legal guidance. The ruling goes on to explain:

> However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.

*Id*. Furthermore:

> In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. However, the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases.

*Id*. at *7.

The record included a notice from the Indiana FSSA that Teresa F. had been determined to be medically frail. [ECF No. 5-14 at 69.] The notice explained that:

> An individual is medically frail if he or she has been determined to have one or more of the following:
>
> -Disabling mental disorder;
> -Chronic substance abuse disorder;
> -Serious and complex medical condition;
> -Physical, intellectual or developmental disability that significantly impairs the individual's ability to perform one or more activities of daily living; or
> -Disability determination from the Social Security Administration.

[ECF No. 5-14 at 69.]

The ALJ did not discuss the notice from the Indiana FSSA in the written decision. There is some minimal level of doubt as to whether the determination that Teresa F. was found to be medically frail was based on a finding that the Indiana FSSA specifically found her to be disabled, as opposed to the other listed possibilities. There is no evidence of record that she had a chronic substance abuse disorder. However, the Indiana FSSA could have determined that Teresa F. had a serious and complex medical condition. Short of conclusively demonstrating that disability was specifically established, the notice is a decision of a government agency, albeit one that she is medically frail. Regardless, the Court finds that the notice is—in all likelihood—evidence of a disability determination that could not be ignored in the written decision. The ALJ's failure to consider the evidence in the notice of decision was error.[11]

---

[11] The Court recognizes that the SSA has revised the regulation that SSR 06-03p is based upon, which now reads that "a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not

However, the Commissioner's argument that any error was harmless is well-taken. The Seventh Circuit has explained the standard by which error can be ignored by the Court:

> But administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result. *Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir. 2010). That would be a waste of time and resources for both the Commissioner and the claimant. Thus, we look at the evidence in the record to see if we can predict with great confidence what the result on remand will be. We note (yet again, see *Spiva,* 628 F.3d at 353 and the critical discussion therein) that the harmless error standard is not, as the Commissioner and district court seem to believe, an exercise in rationalizing the ALJ's decision and substituting our own hypothetical explanations for the ALJ's inadequate articulation. We have already concluded that the ALJ erred. The question before us is now prospective—can we say with great confidence what the ALJ would do on remand—rather than retrospective.

*McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011). A conclusive determination of disability by another governmental agency has no special significance because of the varying standards used by different agencies. However, the underlying evidence that was used to make that determination may be material to not only the Indiana FSSA's determination, but also the SSA's. Despite the ALJ's error by failing to address the notice of the Indiana FSSA, the transcript of the hearing demonstrates that the ALJ was aware of the evidence. The ALJ asked Teresa F.'s representative, "And, before you start do you have -- Ms. Davidson, I saw that the frail [sic]. Do you have any idea

---

binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 416.325) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 416.913(a)(1) through (4)." 20 C.F.R. § 416.904. Here, based on the filing date of the claim, SSR 06-03p still applied and explicit consideration was required in the ALJ's decision.

why she's medically frail?" [ECF No. 5-2 at 43.] Teresa F.'s representative responded, "No, they never give us much information on that." [ECF No. 5-2 at 43.] The exchange underscores what the SSA's ruling and regulation makes clear; the conclusion itself is not nearly as relevant to the ALJ's determination as the basis. The Court finds that it would be a needless formality to remand the claim back to the ALJ to address the conclusory notice of the Indiana FSSA, which she is not bound by, but which she did question during the hearing.

Teresa F.'s hearing representative was alerted to an evidentiary gap that apparently was of some interest to the ALJ. However, Teresa F.'s representative seemed to indicate that no further explanation would be provided by the Indiana FSSA. Her representative did not submit any further evidence of the basis of the Indiana FSSA's determination, nor did she ask for the opportunity to do so. "When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making [her] strongest case for benefits." *Glenn v. Sec'y of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987). The ALJ has a duty to fully and fairly develop the record but should not be forced to function as counsel for the claimant. *See Flener ex. rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004). If Teresa F.'s representative intended to rely on the notice of the Indiana FSSA, she should have produced additional evidence providing its context in response to the ALJ's inquiry. The transcript informs the Court that if the case were remanded, the ALJ would not attach any special significance to the Indiana FSSA's notice alone that Teresa F. had been found to be

medically frail. Thus, the Court will not remand the claim to allow Teresa F.'s representative the opportunity to submit further evidence, especially since her hearing representative suggested that evidence would not even be furnished by the Indiana FSSA. Teresa F. did not fulfill her burden to produce the evidence when given the opportunity in the first instance.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* Taken together, the Court can find no legal basis presented by Teresa F. to reverse the ALJ's decision that she was not disabled during the relevant period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

Date: 7/9/2019

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jean Marie Godfrey
SOCIAL SECURITY ADMINISTRATION
jean.m.godfrey@ssa.gov

Charles D. Hankey
charleshankey@hankeylawoffice.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov